

**FILED**
May 07, 2026 04:34 PM
ST-2023-CV-00439
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **CD PARADISE HOLDINGS, LLLP,** ) | CASE NO. ST-2023-CV-00439 |
| ) | |
| Plaintiff, ) | |
| ) | ACTION FOR BREACH OF |
| -vs- ) | CONTRACT, DEBT, FRAUD, |
| ) | FRAUDULENT TRANSFER, |
| **STEPHEN ISA MUSHAHWAR,** ) | UNJUST ENRICHMENT, ALTER |
| **PHILLIP G. CHESSON, CHESSON** ) | EGO |
| **GROUP, LLC, NAHAKAMA, LLC,** ) | |
| **NAHA HEALTH, LLC, ROBIN** ) | JURY TRIAL DEMANDED |
| **CROSSMAN, GEORGE S.** ) | |
| **BERNARDICH AND DEECHIE** ) | |
| **VENTURES LLC,** ) | |
| ) | |
| Defendants. ) | |

Cite as 2026 VI SUPER 18U

## MEMORANDUM OPINION AND ORDER RE: MUSHAHWAR AND NAHAKAMA'S MOTION TO DISMISS

¶1    Pending before the Court are:

1. Defendant Stephen Isa Mushahwar and Nahakama, LLC's Motion to Dismiss, filed March 21, 2024;

2. Plaintiff's Opposition to Defendants Stephen Isa Mushahwar and Nahakama, LLC's Motion to Dismiss, filed May 31, 2024;

3. Defendant Stephen Isa Mushahwar and Nahakama, LLC's Reply in Support of their Motion to Dismiss, submitted July 5, 2024;

4. Plaintiff's Brief on the Economic Loss Doctrine, filed September 30, 2025; and

5. Defendants Stephen Isa Mushahwar and Nahakama, LLC's Response to Court Order Requiring Briefing on the Economic Loss Doctrine, filed September 30, 2025.

¶2    For the reasons set forth below, the Motion to Dismiss will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    In its Complaint, Plaintiff CD Paradise Holdings, LLLP ("CD Paradise") claims it was "the victim of a complex, sophisticated, and carefully planned scheme orchestrated and devised by the

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
   Mushahwar and Nahakama's Motion to Dismiss
Page 2 of 16

Defendants to defraud CDPH out of millions of dollars under the guise of offering a series of 'investments' through a complex fraudulent design."[1] CD Paradise also claims that "Defendants used shell companies to fraudulently transfer, disguise, and launder" CD Paradise's investment funds.[2] CD Paradise states that on February 9, 2016, it entered into the Purchase and Engagement Agreement ("PEA") with Defendant Stephen Isa Mushahwar ("Mushahwar") and other parties not named as defendants in this case. In February and April of 2016, CD Paradise states it sent Mushahwar $5 million to acquire Gold Claims.[3] Later, on July 6, 2016, in Amendment No. 1 to the PEA ("Amended PEA") Defendant Nahakama, LLC ("Nahakama") was added as a party.[4] The Amended PEA provided, in part, that CD Paradise would provide a short-term loan of $15 million to the other parties in the Amended PEA. On this same day, Mushahwar signed a Promissory Note, promising to pay CD Paradise Fifteen Million Dollars ($15,000,000.00) with interest.[5] CD Paradise states that all the Defendants in this case participated in a fraudulent scheme when handling these assets and that it did not discover the fraud and misuse of its funds until July of 2022.[6]

¶4     CD Paradise alleges five counts in total against Defendants: Count I – Debt and Breach of Contract for the $15 million Dollar Note and Loan (against Mushahwar and Nahakama); Count II – Breach of Contract-The $5 Million Dollar Gold Claim (against Mushahwar and Nahakama); Count III – Fraud (against Mushahwar, Chesson, Chesson Group, Nahakama, Naha Health, Crossman, Bernadich, and Deechie Ventures); Count IV – Fraudulent Transfer/Unjust Enrichment/Constructive Trust (against all Defendants); Count V – Alter Ego/Piercing Corporate Veil (against Nahakama, Chesson Group, and Deechie Ventures).

¶5     Previously, before bringing the present suit before this court, CD Paradise (along with Dale Schmidt) brought a civil suit before the Circuit Court of the Sixth Judicial Circuit in Pinellas County, Florida against Mushahwar and Nahakama (plus additional defendants) with similar allegations,[7] captioned as *CD Paradise Holdings, LLLP v. Mushahwar*, and docketed as 2022-005591-CI (the "Florida Suit"). Plaintiffs filed the complaint on November 24, 2022. In the Florida Suit, Mushahwar filed a Motion to Dismiss for Improper Venue, and Nahakama, along with other defendants, also filed a Motion to Dismiss for Improper Venue, with both Motions arguing that the Virgin Islands is the only suitable venue. On July 1, 2023, in its Agreed Order for Dismissal Without Prejudice, the Circuit Court dismissed the lawsuit without prejudice for improper venue subject to the suit being refiled in a court of competent jurisdiction within the U.S. Virgin Islands. CD Paradise then filed the present Complaint with this court on December 5, 2023. Defendants Mushahwar and Nahakama subsequently filed the present Motion to Dismiss pursuant to Virgin Islands Rules of Civil Procedure 9(b), 12(b)(6), and 12(b)(7).

---

[1] Compl. ¶ 2.

[2] Compl. ¶ 2.

[3] Compl. ¶ 25.

[4] Compl. ¶ 28.

[5] Compl., Ex. 2.

[6] Compl. ¶¶ 87-94.

[7] The Amended Complaint in the Florida case alleged in the counts: Breach of Contract Accompanied by Fraudulent Act; Breach of Fiduciary Duty; Civil Conspiracy; Fraud; Aiding and Abetting Breach of Fiduciary Relationship; Intentional Misrepresentation; Failure to Disclose Material Fact; Florida's RICO Act; Unjust Enrichment; and Declaratory Judgment; Imposition of Equitable Liens; Equitable Subrogation and Foreclosures on Equitable Liens.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
  Mushahwar and Nahakama's Motion to Dismiss
Page 3 of 16

2026 VI SUPER 18U

## LEGAL STANDARD

### Virgin Islands Rule Of Civil Procedure 12(b)(6)

¶6      Virgin Islands Rule of Civil Procedure 12(b)(6) allows a party to challenge a pleading for "failure to state a claim upon which relief can be granted."[8] To survive a 12(b)(6) motion, the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief,"[9] and "[t]he facts alleged in the pleadings, and any inferences drawn therefrom must be viewed in the light most favorable to the plaintiff."[10] All material allegations in the complaint are taken as true, and the Court must construe all facts in a light most favorable to the non-moving party.[11] "Even if a complaint is 'vague,' 'inartfully drafted,' 'a bare-bones outline,' or 'not a model of specificity,' the complaint may still be adequate so long as it can reasonably be read as supporting a claim for relief . . . ."[12] The purpose of a motion to dismiss at this stage of litigation "is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[13] Further, "matters outside of the pleadings should not be considered in deciding a Rule 12(b)(6) motion to dismiss."[14]

¶7      Since Virgin Islands Rule 8(a)(2) explicitly states that the Virgin Islands is a notice pleading jurisdiction, a plaintiff merely needs to provide a basic legal and factual basis for her claim to put a defendant on fair notice of the claims brought against him.[15] In fact, "[t]he complaint need not identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief."[16] This standard is reinforced by the policy that litigants should not be expected to win their cases on the pleadings but rather be given their day in court,[17] and the standard is necessarily a more liberal and forgiving approach that is different from the *Twombly* plausibility standard.[18] Essentially, Rule 8(a)(2) allows the Court to proceed with the

---

[8] V.I. R. Civ. P. 12(b)(6).

[9] V.I. R. Civ. P. 8(a)(2).

[10] *Adams v. North West Company (International), Inc.*, 63 V.I. 427, 438 (V.I. Super. Ct. 2015) (citing *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 566 (V.I. 2012)).

[11] *L'Henri, Inc. v. Vulcan Materials Co.*, Civ. No. 206–170, 2010 WL 924259, at *1 (D.V.I. Mar. 11, 2010) (citing *Christopher v. Harbury*, 536 U.S. 403, 406 (2002)).

[12] *Basic Servs., Inc. v. Gov't of Virgin Islands*, 2019 VI 21, ¶12 (citing *Casaday v. Allstate Ins. Co.*, 232 P.3d 1075, 1080 (Utah App. 2010)).

[13] General standards for a Rule 12(b)(6) dismissal, 6 Annotated Patent Digest § 39:32.

[14] § 39:35. Matters outside the pleadings, 6 Annotated Patent Digest § 39:35.

[15] *See Bank of Nova Scotia v. Flavius*, Super. Civ. No. SX-16-CV-125, 2018 WL 745958, at *6 (Super. Ct. Feb. 2, 2018).

[16] *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79, 81–82(internal quotation marks omitted) (citation omitted).

[17] *See Carrillo v. Boise Tire Co.*, 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012) ("The Idaho Rules of Civil Procedure set forth a system of notice pleading intended to free litigants from what were once rigid pleading requirements.").

[18] *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 604-05 (Minn. 2014) ("After all, Minnesota is a notice-pleading state and 'does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it.'"); *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) ("Tennessee follows a liberal notice pleading standard, . . . which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court."); *McCurry v. Chevy Chase Bank, FSB*, 169 Wash. 2d 96, 101, 233 P.3d 861, 862 (2010)(en banc) ("Under CR 12(b)(6) a plaintiff

*CD Paradise Holdings, LLLP v. Mushahwar et al.*　　　　　　　　　2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
　Mushahwar and Nahakama's Motion to Dismiss
Page 4 of 16

discovery process and address pleadings based on the merits of each asserted claim,[19] and "[p]leadings . . . must be fatally defective before they may be rejected as insufficient."[20] Further, "the purpose of the notice pleading standard is to avoid 'dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief.'"[21]

## ANALYSIS

### I. Counts I, II and III Are Not Time-Barred.

¶8　Mushahwar and Nahakama argue that Counts I, II, and III are all time-barred. First, for Counts I and II (breach of contract claims), they claim that the Counts are time-barred because six years passed before CD Paradise filed the Complaint on December 5, 2023. They cite 5 V.I.C. § 31(a)(3)(A), which states: "An action upon a contract or liability, express or implied, excepting those mentioned in paragraph (1)(C) of this section" must be commenced within six years after the cause of action has accrued.[22] Notably, 5 V.I.C. § 40 states:

> Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be a bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made.[23]

Similarly, 5 V.I.C. § 32(c) states: "In an action upon a new promise, fraud, or mistake, the limitation shall be deemed to commence only from the making of the new promise or the discovery of the fraud or mistake."[24] "However, '[i]f the allegations, taken as true, show that relief is barred by the applicable statute of limitations, a complaint is subject to dismissal for failure to state a claim' under V.I. Rules of Civil Procedure 12(b)(6)."[25] Additionally, 5 V.I.C. § 39 states:

> No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest.[26]

¶9　Here, Mushahwar and Nahakama argue that December 5, 2023, is past the deadline from the statute of limitations. The PEA is dated February 9, 2016 (signed by Mushahwar and

---

states a claim upon which relief can be granted if it is *possible* that facts could be established to support the allegations in the complaint.") (emphasis in original).

[19] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("The liberal notice pleading of [Federal] Rule [of Civil Procedure] 8(a) . . . was adopted to focus litigation on the merits of a claim.").

[20] *Corwin v. Brit. Am. Tobacco PLC*, 251 N.C. App. 45, 56, 796 S.E.2d 324, 333 (2016) (citation omitted).

[21] *Basic Servs., Inc.*, ¶10 (citations omitted).

[22] V.I. CODE ANN., tit. 5, § 31; *see* V.I. CODE ANN., tit. 11A, § 3-118(a).

[23] V.I. CODE ANN., tit. 5, § 40.

[24] V.I. CODE ANN., tit. 5, § 32(c).

[25] *Nicholsen v. Dennery*, 2025 VI SUPER 12U, ¶ 8 (V.I. Super. Apr. 16, 2025) (citations omitted).

[26] V.I. CODE ANN., tit. 5, § 39.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
  Mushahwar and Nahakama's Motion to Dismiss
Page 5 of 16

Nahakama), and the Amended PEA (signed by Mushahwar and Nahakama) and Promissory Note (signed by Mushahwar) are both dated July 6, 2016.[27] Regarding Count I, the Promissory Note states: "This Note with interest is due in full on the earlier of December 31, 2016 or the applicable Expiration Date."[28] As Mushahwar and Nahakama argue, six years after December 31, 2016, would be December 2022, which is a year before CD Paradise filed the present Complaint (on December 5, 2023). Similarly, for Count II, for the Gold Claims, Mushahwar and Nahakama claim that because CD Paradise sent Mushahwar $5,000,000.00 for the Gold Claims around Spring 2016 (February and April 2016), the six-year statute of limitations would have a deadline of Spring 2022, which is before December 5, 2023.[29]

¶10    However, a central issue[30] with Mushahwar and Nahakama's argument is that CD Paradise has alleged that Mushahwar and Nahakama issued multiple written and signed promises to CD Paradise, reaffirming their promises to pay continuing to as late as July 2022, making the claims not time-barred.[31] In the Reply, particularly for Count I, Mushahwar and Nahakama cite 5 V.I.C. § 39 and claim that no sufficient, signed, and written acknowledgements exist for purposes of the statute of limitations. They argue:

> Plaintiff appears to infer, without expressly stating, that this Court should make new common law (in the absence of any *Banks* analysis) and, on the authority of two cases from other states (one of which is unpublished), hold that any text or email sent by any person is a "signed" writing for purposes of 5 V.I.C. §39 (and presumably for the Virgin Islands Statute of Frauds, 28 V.I.C. §244, as well). The Court should decline Plaintiff's invitation because: (1) Plaintiff did not plead the existence of any signed writing promising to pay the Promissory Note subsequent to the execution of the Promissory Note and may not do so now through argument in opposition to a motion to dismiss; (2) plaintiff waived this argument by failing to conduct a *Banks* analysis, and (3) the cases cited by Plaintiff are not binding on this Court, are distinguishable, and there is ample authority to the contrary.[32]

¶11    CD Paradise previously stated in its Complaint that Mushahwar and Nahakama continuously reassured CD Paradise in writing[33] that CD Paradise would be receiving funds (plus interest) relating to the debt owed, and that these "reaffirmations continued until at least July 2022."[34] Unlike *Anderson v. Bryan* where a motion to dismiss was granted because the plaintiff never alleged that the defendant made a subsequent promise in writing, CD Paradise here has expressly stated in the Complaint that Mushahwar and Nahakama repeatedly reaffirmed the debt

---

[27] Compl., Ex. 1-2.

[28] Compl., Ex. 2.

[29] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 9.

[30] CD Paradise previously filed its complaint against Mushahwar and Nahakama (and other defendants) regarding the Amended PEA and Promissory Note in November 2022 in Florida, and the Circuit Court dismissed the case without prejudice subject to refiling in the U.S. Virgin Islands, but Mushahwar and Nahakama inexplicably do not mention or account for this filing in Florida.

[31] Pl.'s Opp'n to Defs. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss, 12–13.

[32] Def. Stephen Isa Mushahwar and Nahakama, LLC's Reply in Supp. of their Mot. to Dismiss, 3–4.

[33] Compl., ¶ 42.

[34] Compl., ¶ 60.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
   Mushahwar and Nahakama's Motion to Dismiss
Page 6 of 16

in writing up to at least July 2022.[35] Additionally, for purposes of 5 V.I.C. § 39, Mushahwar and Nahakama appear to want CD Paradise to fully prove at this early stage that signed writing exists for the alleged continuous promises and that the alleged signed writing is sufficient. But the facts alleged in the pleadings, and any inferences drawn therefrom must be viewed in the light most favorable to the Plaintiff. The purpose of a motion to dismiss at this stage of litigation is to test the sufficiency of a complaint, not to resolve disputed facts. A complaint can be vague or inartfully drafted but still adequate as long as it can reasonably be read as supporting a claim for relief and giving the defendants notice. CD Paradise has said a sufficient amount at this early stage of litigation. Consequently, CD Paradise's allegations in Counts I and II are sufficient to survive this statute of limitations challenge.

¶12    Lastly, Mushahwar and Nahakama claim that the complaint was filed too late for Count III as well. In the Virgin Islands, claims of fraud fall within a two-year statute of limitations.[36] But this court has previously illustrated the specific application of the statute of limitations.

> According to 5 V.I.C. § 32(c), "in an action upon ... fraud ... the limitation shall be deemed to commence only from ... the discovery of the fraud ...." However, in *Martin v. Martin*, 54 V.I. 379 (V.I. 2010), the Court specifies that the claims for fraud and misrepresentation commence when the defendant discovered or should have discovered the alleged fraud.[37]

¶13    Mushahwar and Nahakama argue that CD Paradise discovered or should have discovered the alleged fraud by Spring of 2016 for the Gold Claims, by December 2016 for the alleged Bank Shares, and by August 2020 for the alleged Forbearance from Collecting the $15 million Loan.[38] Mushahwar and Nahakama also include a text message[39] sent in August 2020 from Dale Schmidt to Mushahwar, claiming that it proves that Dale Schmidt (and CD Paradise) knew that Naha Health, Mushahwar, Nahakama were engaged in fraud. These text messages state:

> When can we meet to determine where WE are going? I'm hearing that NAHA is operating in a different direction than we've discussed which, if so, is different than we've laid out, is not taking advantage of USVI EDC 90% tax reductions and will result in lower returns to you and I.
>
> I'm not sure who you are talking to Dale. We are moving forward to purchase CHS/South Carolina. I'm on a conference we are still finishing the paperwork on the last deal and delivering another contract. My intention was to get Mitch started today but I think it will be tomorrow. You and I are on the same page unless I'm

---

[35] *Anderson v. Bryan*, 2010 WL 10930917, at *5 (V.I. Super. Dec. 6, 2010) ("However, his Motion to Dismiss must succeed as to Count I of the First Amended Complaint because Anderson never alleged that Bryan made a subsequent promise to pave in writing, which is required if a plaintiff is to succeed on a claim that the limitations period should be tolled.").

[36] *Paul M. Montrone Revocable Tr. of 2010 v. Cogan*, 2024 VI SUPER 52U, ¶ 19 (V.I. Super. Dec. 2, 2024).

[37] *Id.* at ¶ 17 (citations omitted).

[38] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 18-19.

[39] Compl., Ex. 3.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*  2026 VI SUPER 18U
Case No. ST-2023-CV-00439
**Memorandum Opinion and Order Re:**
  Mushahwar and Nahakama's Motion to Dismiss
Page 7 of 16

missing something." LS[40]

Mushahwar and Nahakama assert that these text messages fully demonstrate that CD Paradise knew that the funds were not locked in escrow and that some of the funds were instead invested in Naha Health, so CD Paradise was allegedly aware of alleged wrongdoing in August 2020, making it barred.[41]

¶14    However, CD Paradise's Complaint alleges that it first discovered the alleged fraud in July 2022, and that Mushahwar and Nahakama in their Motion have taken the text message "out of context" and interpreted the language in the light most favorable to themselves.[42] For the previously stated reasons, the facts alleged in the pleadings, and any inferences drawn therefrom must be viewed in the light most favorable to the plaintiff. As such, all Counts are not time-barred.

## II. Count II

### A. CD Paradise Has Standing.

¶15    Mushahwar and Nahakama argue that CD Paradise lacks standing for Count II (and Count III[43]).[44] But standing in the U.S. Virgin Islands is different from the standing in federal courts and does not impact the jurisdiction of the court:

> The Virgin Islands Supreme Court acknowledge that "whether the party bringing suit ha[s] a right to the relief it [i]s seeking.... goes to the merits of the cause of action—not the Superior Court's authority to hear the case in the first place." Thus, standing in the Virgin Islands challenges whether a plaintiff has stated a claim for relief. Since standing, like mootness and other federal constitutional doctrines, are claims-processing rules in the Virgin Islands, the rule that governs a motion to dismiss for lack of standing is not Rule 12(b)(1), lack of subject-matter jurisdiction, but rather "Rule 12(b)(6), failure to state a claim for relief, Rule 12(c), judgment on the pleadings, or Rule 56, summary judgment."[45]

¶16    CD Paradise states that it has standing for Count II as the Gold Claims are an integral part of the Amended PEA and Note. CD Paradise argues that it paid Mushahwar to acquire the gold claims and that he failed and that CD Paradise "seeks damages for the loss of its investment money given to Mushahwar for non-existent Gold Claims" (and not to have Gold Claims transferred).[46] CD Paradise has an interest in this case (as a party to the Amended PEA) and has listed its alleged damages caused by Defendants. Its allegations in Count II are based upon an alleged breach of the

---

[40] Compl. Ex. 3.

[41] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 19.

[42] Pl.'s Opp'n to Defs. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 19.

[43] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 13.

[44] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 8 (citation omitted).

[45] *Hess Oil Virgin Islands Corp. v. Daniel*, 72 V.I. 676, 697, 2020 VI SUPER 50, ¶ 23 (Super. Ct. 2020) (citations omitted).

[46] Pl.'s Opp'n to Defs. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 13-14.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*         2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
  Mushahwar and Nahakama's Motion to Dismiss
Page 8 of 16

Amended PEA by Mushahwar and Nahakama, and Count III concerns allegations of fraud and fraudulent inducement relating to the Amended PEA, including the Gold Claims.[47] As such, CD Paradise does not lack standing.

### B. CD Paradise Did Not Fail To Join An Indispensable Party.

¶17     Next, Mushahwar and Nahakama argue that Count II should be dismissed for failure to join an indispensable party: Gordian Gold Ltd. ("Gordian Gold"). Gordian Gold is a party in the Amended PEA, and it is based in the British Virgin Islands ("BVI"). Virgin Islands Rule of Civil Procedure 12(b)(7) allows a party to challenge a pleading for "failure to join a party under Rule 19."[48] Virgin Islands Rule of Civil Procedure 19 states:

> (a) **Persons Required to Be Joined if Feasible.**
> (1) **Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[49]

Whether the joinder is necessary and procedurally feasible are two central factors to consider under Rule 19.[50] "In reviewing a motion to dismiss under Rules 12(b)(7) and 19, the court must accept all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. It is the movant's burden to prove that a non-party is indispensable to the adjudication of the action."[51]

¶18     In their Motion, Mushahwar and Nahakama argue that numerous reasons exist as to why Gordian Gold is an indispensable party, such as Gordian Gold would be impacted by the ruling and that Mushahwar and Nahakama could incur inconsistent obligations.[52] But CD Paradise is asserting its own claims here under the Amended PEA. Dismissing Count II because of Virgin Islands Rule 19 would be inappropriate for at least two main reasons. First, beyond speculation, Mushahwar and Nahakama have not met their burden to show that omitting other parties, such as Gordian Gold, would subject Mushahwar and Nahakama to substantial risk of incurring double,

---

[47] *See Olson v. Virgin Islands Water & Power Auth.*, 2024 VI SUPER 17 (V.I. Super. Apr. 24, 2024); *See Fabien v. Fabien*, 69 V.I. 809, 825 (2018) (citations omitted).

[48] V.I. R. Civ. P. 12(b)(7).

[49] V.I. R. Civ. P. 19(a).

[50] *Payne v. Frett-Gregory*, 78 V.I. 410, 420–21, 2024 VI SUPER 4, ¶ 13 (V.I. Super. 2024) (citations omitted).

[51] *Id.*

[52] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 9.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*　　　　　　　　　　2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
　Mushahwar and Nahakama's Motion to Dismiss
Page 9 of 16

multiple, or otherwise inconsistent obligations.[53] For instance, Gordian Gold has not demonstrated interest in joining this case or in bringing a lawsuit, and Mushahwar and Nahakama have not shown how omitting Gordian Gold would actually lead to inconsistent obligations.[54] Gordian Gold was also not a party in the Florida Suit. Second, if Gordian Gold were to wait to bring later claims against Mushahwar and Nahakama, Gordian Gold would likely face statute of limitations issues with allegations concerning the Gold Claims. As such, this court will deny the Rule 12(b)(7) motion.

## III. Count III

### A. Economic Loss Doctrine.

¶19　In Count III, CD Paradise makes a claim of fraud and fraudulent inducement.[55] Mushahwar and Nahakama argue that Count III should be dismissed under Rule 12(b)(6) because it is barred by the economic loss doctrine and a PEA merger clause.[56] "The economic loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that stem only from breach of contract or are associated with the contractual relationship."[57] Because the economic loss doctrine currently remains unsettled in the Virgin Islands,[58] this Court directed the parties to complete a *Banks* analysis.[59] "Under *Banks*, we consider (1) the common law rule this jurisdiction has applied in the past; (2) the majority rule adopted in other jurisdictions; and most importantly (3) the soundest rule of law for the Virgin Islands."[60]

¶20　The first prong of the *Banks* analysis favors adopting the economic loss doctrine. Mushahwar and Nahakama state that the Superior Court of the Virgin Islands first recognized the economic loss doctrine in 2006, and both parties acknowledge that Virgin Islands courts have previously recognized the economic loss doctrine, even after *Banks*.[61] "Historically, in the Virgin

---

[53] *See Arvidson v. Buchar*, No. ST-16-CV-410, 2018 WL 10613032, at *14 (V.I. Super. June 6, 2018); *See Richards v. Legislature of Virgin Islands*, 2008 WL 2563566, at *5 (D.V.I. June 24, 2008).

[54] As stated in the Complaint, Dale Schmidt appears to be the manager of CD Paradise and to have formed Gordian Gold.

[55] *XO Bistro, LLC v. Anthony Merrill & White Star, LLC*, 2021 VI SUPER 74U, ¶ 16 (V.I. Super. July 21, 2021) ("The *Arvidson* court further condensed the *Merchants Commercial Bank* rule to six elements: '(1.) a misrepresentation; (2.) the defendant's knowledge or reason to know the misrepresentation was false; (3.) the defendant's making the misrepresentation for the purpose of inducing another to act or to refrain from acting; (4.) the plaintiff's justifiable reliance upon the misrepresentation; and (5.) the pecuniary loss or injury (6.) caused by justifiably relying upon the misrepresentation.'"); *See Wilkinson v. Wilkinson*, 2019 VI 9, ¶ 9 (2019).

[56] Mushahwar and Nahakama emphasize the importance of a claimed merger clause as they argue it supersedes all prior discussion between the signatory parties and demonstrates how the parties expressly intended to allocate the risk involved with the PEA and Amended PEA.

[57] *Kirkland v. Feddersen*, 2023 VI SUPER 25U, ¶ 7 (V.I. Super. May 18, 2023) (citing 74 Am. Jur. 2d Torts § 24).

[58] This specific Court has previous utilized this doctrine, such as in *Cannon v. Fulcrum Constr., LLC*. However, instead of a tort claim like negligence, this case involves the doctrine in the context of alleged fraud, which is notably different.

[59] *Robertson v. Banco Popular de Puerto Rico*, 77 V.I. 574, 599 n.11 (2023) ("Therefore, our rejection of the gist of the action doctrine should not be construed as an endorsement or repudiation of the economic loss doctrine or other related doctrines; those remain open questions, to be considered in an appropriate case where this Court has the benefit of a *Banks* analysis by the Superior Court and briefing from the parties.")

[60] *Roy v. Banco Popular de Puerto Rico*, 2025 VI 19, ¶ 11 (Sept. 4, 2025) (quotations and citations omitted).

[61] *E.g., Turnbull v. Univ. of the Virgin Islands*, 2016 WL 1047893, at *5 (V.I. Super. Mar. 2, 2016) ("Virgin Islands

*CD Paradise Holdings, LLLP v. Mushahwar et al.*          2026 VI SUPER 18U
Case No. ST-2023-CV-00439
**Memorandum Opinion and Order Re:**
  **Mushahwar and Nahakama's Motion to Dismiss**
**Page 10 of 16**

Islands, the economic loss doctrine was only applicable in products liability cases," but it gradually expanded to include more cases, such as negligent misrepresentation cases.[62] For instance, the Superior Court has previously stated:

> The economic loss doctrine, which "forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship[,]" has been adopted by the Superior Court as the soundest rule for the Virgin Islands. However, the Superior Court has not adopted the economic loss doctrine as a "bright-line rule." Rather, the economic loss doctrine must be applied through "a fact-intensive, case-by-case approach" because "the eccentricities of each case may counsel different conclusions for different reasons at different times."[63]

However, "[a]s the Superior Court has noted, many courts have carved out an exception to the economic loss rule for fraud and negligent misrepresentation claims."[64] CD Paradise argues that the Economic Loss Doctrine is "riddled with exceptions," especially for fraud, and that Virgin Islands courts that might have recognized the doctrine have decided to not apply the doctrine in most cases.[65]

¶21    The second prong strongly favors generally adopting the economic loss doctrine. With one exception,[66] Mushahwar, and Nahakama claim that all U.S. states recognize the economic loss doctrine to some degree.[67] The development of this doctrine was also influenced in part by the U.S. Supreme Court's unanimous decision in *East River* (regarding product liability and admiralty law).[68] Mushahwar and Nahakama argue that other jurisdictions generally fall into three separate categories in how they utilize the doctrine: (1) the majority approach where a plaintiff cannot recover purely economic damages in tort at all, (2) the intermediate rule where some exceptions to the black letter majority rule are permitted, and (3) a type of minority approach where the

---

courts should and will continue to apply the doctrine when appropriate.").

[62] *Kirkland*, 2023 VI SUPER 25U, at ¶ 8 (citations omitted).

[63] *Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 420 (V.I. Super. 2017) (footnotes omitted).

[64] *Id.* at 422 (quotation omitted) (citing *Turnbull*, 2016 WL 1047893, at *6 (citations omitted)).

[65] Pl.'s Brief on the Economic Loss Doctrine 7.

[66] Mushahwar and Nahakama state that only Louisiana, a civil law jurisdiction, has rejected the doctrine.

[67] *E.g., Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 220; *e.g., HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 23, 435 P.3d 193, 198 ("For the above reasons we hold that the economic loss rule applies to fraudulent inducement claims that overlap completely with a breach of contract claim. In so holding we do not foreclose the possibility of a fraudulent inducement exception in some other circumstance."); *e.g., Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 45, 553 P.3d 1213, 1241 (2024) ("Accordingly, we answer the certified question, as reframed: Under California law, a plaintiff may assert a cause of action for fraudulent concealment based on conduct occurring in the course of a contractual relationship, if the elements of the claim can be established independently of the parties' contractual rights and obligations and the tortious conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties when they entered into the contract."); *e.g., Dittman v. UPMC*, 649 Pa. 496, 528, 196 A.3d 1036, 1056 (2018) ("We further hold that the lower courts erred in concluding that Pennsylvania's economic loss doctrine bars Employees' negligence claim."); *e.g., Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc.*, 115 Haw. 232, 298, 167 P.3d 225, 291 (2007), as corrected on denial of reconsideration (Sept. 20, 2007).

[68] *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
   Mushahwar and Nahakama's Motion to Dismiss
Page 11 of 16

doctrine is less of a broad principle and a plaintiff may recover in tort for economic loss with minimal limitation.[69]

¶22    The third prong of the *Banks* analysis favors adopting the economic loss doctrine, albeit less strongly than the second *Banks* factor. For instance, the parties disagree on whether the economic loss doctrine is truly the soundest rule of law for the Virgin Islands. Mushahwar and Nahakama assert that the analysis is straightforward: "Virgin Islands courts have historically applied the economic loss doctrine, as do all other common law jurisdictions nationwide. A majority of those jurisdictions apply the doctrine in its clearest sense, and this approach is presumed to be the soundest rule for the Virgin Islands."[70] Of the different versions of the economic loss doctrine used by other jurisdictions, Mushahwar, and Nahakama argue that the Virgin Islands should adopt the majority approach (as the more strict application of the doctrine) that prevents a plaintiff from recovering purely contractual economic losses in tort.[71] "'Unless public policy compels another result, the majority rule is generally presumed to be the soundest.'"[72]

¶23    However, CD Paradise argues that the economic loss doctrine is full of exceptions (such as with fraud and fraudulent inducement) and that the Virgin Islands should reject the economic loss doctrine for the same reasons stated in *Robertson*. In *Robertson*, the Supreme Court outlined reasons for rejecting the gist of the action doctrine:

> In addition to providing no practical benefit, adoption of the gist of the action doctrine in the Virgin Islands would impair the administration of justice by barring plaintiffs from bringing potentially meritorious claims. . . . Finally, the gist of the action doctrine is inconsistent—or at least in tension—with existing Virgin Islands common law and public policy . . . Consequently, adopting the gist of the action doctrine would require this Court to overturn—or at least considerably narrow—its prior precedent. Moreover, there is a "strong public policy" in the Virgin Islands "for determining civil cases on the merits," as well as for considering claims and arguments based on their substance rather than their form. For these reasons, we conclude that the gist of the action doctrine does not represent the soundest rule for the Virgin Islands. This is not to say that Robertson, if he were to prevail on all three of his causes of action, would be entitled to collect a triple recovery. This Court has already held that plaintiffs are prohibited from receiving a double recovery that would require a defendant to pay twice for the same element of damages – not just when a plaintiff sues a defendant for both breach of contract and tort, but also when a plaintiff sues a defendant for two or more torts.[73]

Nevertheless, despite these reasons for having rejected the gist of the action doctrine, the economic loss doctrine is different from the gist of the action doctrine, and this Court views the economic

---

[69] Resp. to Ct. Order Requiring Briefing on the Economic Loss Doctrine 7.

[70] Resp. to Ct. Order Requiring Briefing on the Economic Loss Doctrine 15.

[71] Resp. to Ct. Order Requiring Briefing on the Economic Loss Doctrine 7.

[72] *Roy*, 2025 VI 19, at ¶ 14 (citation omitted).

[73] *Robertson*, 77 V.I. at 598–99 (citations and footnotes omitted).

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
    Mushahwar and Nahakama's Motion to Dismiss
Page 12 of 16

loss doctrine as the soundest rule of law for the Virgin Islands.

¶24    Additionally, like in *Turnbull*, there are two questions lurking here: (1) whether to adopt or apply the economic loss doctrine in the Virgin Islands at all and then, (2) whether and how the doctrine applies to the particular claims concerning fraud in this case.[74] For question one, the three-part *Banks* analysis above favors the Virgin Islands generally adopting the economic loss doctrine. But question two involves further analysis as numerous jurisdictions have carved out exceptions, such as with fraud.[75] As noted in *Turnbull*, "across the country there are as many different applications and exceptions as there are jurisdictions."[76]

¶25    In this particular case, and at this early stage, there are uncertainties concerning Defendants' alleged actions and whether the contract terms already establish relief for claims of fraud or fraudulent inducement.[77] Furthermore, under Virgin Islands Rule of Civil Procedure 18, parties are normally permitted to combine properly-pled claims with independent or alternative claims. Even if the economic loss doctrine is the soundest rule of law in the Virgin Islands, this Court is persuaded that the economic loss doctrine does not preclude the unique tort claims in this specific case with fraud and fraudulent inducement. Similar to the reasons stated in *Robertson*, allowing specific claims for fraud and fraudulent inducement is consistent with legal precedent and public policy in the Virgin Islands. Consequently, this Court finds that Count III is not barred by the economic loss doctrine.

## B. Virgin Islands Rule Of Civil Procedure 9(b).

¶26    Mushahwar and Nahakama assert that CD Paradise's claims alleging fraud should be denied for failure to comply with Virgin Islands Rule of Civil Procedure 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[78] Thus, there is a particularity requirement when alleging fraud.[79] But while Rule 9(b) "implies a heightened standard, the standard is not so demanding as to go beyond the notice pleading standard entirely."[80]

> The Virgin Islands Supreme Court has not had occasion to weigh the requirements of Rule 9(b) with Rule 8(a). But one Superior Court judge cautioned that "courts 'considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.' 'Rule 9(b) must not be read to abrogate Rule 8(a) requiring notice pleading.'" So, "courts do allow 'some leniency ... for complex issues or

---

[74] *Turnbull*, 2016 WL 1047893, at *5.

[75] *See generally* Jeffrey L. Goodman, Daniel R. Peacock & Kevin J. Rutan, *A Guide to Understanding the Economic Loss Doctrine*, 67 DRAKE L. REV. 1 (2019).

[76] *Id.* at *6 (citation omitted).

[77] *Kirkland*, 2023 VI SUPER 25U, at ¶ 33.

[78] V.I. R. CIV. P. 9(b); *XO Bistro, LLC*, 2021 VI SUPER 74U, ¶ 8 (citation omitted).

[79] *James v. Mosler*, 2021 VI SUPER 53U, ¶ 16 (Super. Ct. May 24, 2021).

[80] *Great St. Jim, LLC v. ProSolar Sys., LLC*, 2020 VI SUPER 25U, ¶ 12 (V.I. Super. Feb. 13, 2020).

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
**Memorandum Opinion and Order Re:**
  **Mushahwar and Nahakama's Motion to Dismiss**
**Page 13 of 16**

transactions covering a long period of time.'" But Rule 9(b) does "demand[ ] that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.'" Because "in general, 'Rule 9(b) exists to eliminate general, unsubstantiated charges of fraud that can do damage to a defendant's reputation.'" "'A complaint that presents in detail the who, what, when, where, and how' of the alleged fraud has generally been held to comply with Rule 9(b)."[81]

Notably, "if the factual information is peculiarly within the defendants' knowledge or control, then more specificity may not be possible."[82]

¶27    Mushahwar and Nahakama assert numerous reasons why Count III fails to satisfy Rule 9(b). However, this Court finds that the Complaint sufficiently complies with Rule 9(b). The Complaint presents in detail the who, what, when, where, and how of the alleged fraud. The "who" is CD Paradise and the listed Defendants, including Mushahwar and Nahakama. The "when" was an alleged ongoing process between 2016 and 2022 when CD Paradise was first allegedly induced into the contract (regarding the forming of the PEA and Amended PEA) and then later learned about the alleged fraud and breach. The "where" is primarily between Florida and the U.S. Virgin Islands in the course of business dealings when Mushahwar and Nahakama allegedly made ongoing communications and reassurances to CD Paradise. The "what" and "how" appear to be the primary focus for arguments raised by Mushahwar and Nahakama. But Rule 9(b) does not require the voluminous amount of detail that Mushahwar and Nahakama assert that it requires. It is very early in the litigation of this case, and many of the specific details Mushahwar and Nahakama seek may be addressed later in discovery.

¶28    For instance, Mushahwar and Nahakama claim that CD Paradise's allegations in Count III "center around three clusters: (1) alleged fraud related to the 'Gold Claims,' (2) alleged fraud relating to the shares of 'Northwest Bancorporation of Illinois, Inc., or to invest in other valuable ventures,' and (3) the alleged fraud relating to 'other valuable ventures' that allegedly induced Plaintiff not to seek to collect on the already matured Promissory Note."[83] For the Gold Claims, Mushahwar and Nahakama argue that CD Paradise's allegations in Count III (including those pertaining to title) contradict the PEA. But this argument would require a factual determination that is best left for after discovery has commenced (considering this is one of the central issues of the entire case), and Rule 9(b) does not require such determinations at this stage. For the Bank Share Transfer, as CD Paradise argues, "Defendants' failure to acquire the bankshares by December 31, 2016 is not an element of this action."[84] Instead, CD Paradise has alleged that these were false representations made by Mushahwar and Nahakama to CD Paradise as possible alternative investments and forms of compensation to further induce CD Paradise to invest.[85]

---

[81] *Erbey Holding Corp. v. BlackRock Fin. Mgmt., Inc.*, 78 V.I. 206, 366–67 (Super. Ct. 2023), *aff'd in part, rev'd in part*, 2025 VI 25 (Dec. 18, 2025) (citations omitted).

[82] *Id.* at 372 (citation omitted).

[83] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 12–13.

[84] Pl.'s Opp'n to Defs. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 19.

[85] Compl., ¶¶ 82–84.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
    Mushahwar and Nahakama's Motion to Dismiss
Page 14 of 16

Regarding the issue of forebearance from collecting the $15 million loan, Mushahwar and Nahakama argue that "[n]othing in the PEA or the Amended PEA required the proceeds of Plaintiff's $15M loan to be held in an escrow account."[86] Discovery later in litigation may address this issue, but this specific argument is not fatal to Count III under Rule 9(b). They also assert that CD Paradise's allegations in Count III are "illogical" in different ways.[87] Mushahwar and Nahakama deeming these allegations as illogical is not required under Rule 9(b). Additionally, Mushahwar and Nahakama argue here that "Plaintiff's claim fails because the fraud allegations: (1) do not provide the who, what, where, when, and how particularity required by Rule 9(b); (2) impermissibly aggregate defendants; and (3) fail to allege that any purportedly fraudulent statement or representation made was knowingly false at the time it was made."[88] Count III does not impermissibly aggregate Mushahwar and Nahakama together because both were allegedly signatories to the PEA and Amended PEA and both allegedly convinced CD Paradise to forbear. CD Paradise has also alleged that Mushahwar and Nahakama willfully designed this alleged fraudulent scheme to induce investment by CD Paradise and forebear on seeking repayment for a period of time. The who, what, when, where, and how requirement is met, and Mushahwar and Nahakama have been given sufficient notice of the fraud claims against them. As a result, the Rule 9(b) threshold is satisfied.

## IV. Count IV

### A. Constructive Trust.

¶29    Count IV of CD Paradise's Complaint is against all Defendants and titles Count IV as: Fraudulent Transfer/Unjust Enrichment/Constructive Trust. Mushahwar and Nahakama argue that a constructive trust is a remedy and not a cause of action and that "to the extent Count IV attempts to plead a cause of action for a constructive trust, that claim must be dismissed for failure to state a claim."[89] This Court agrees with Mushahwar and Nahakama that a constructive trust alone is not a separate cause of action.[90] However, if CD Paradise included a constructive trust within the allegations in Count IV with the intention of it simply serving as a remedy and not as an additional cause of action, then that is permissible. This Court will not dismiss the remedy of constructive trust sought in Count IV because the count also alleges a claim for Fraudulent Transfer.[91]

### B. The Unjust Enrichment Claim Is Not Barred By Contract.

¶30    "[T]he elements of the unjust enrichment cause of action to require the plaintiff to prove

---

[86] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 16.

[87] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 17.

[88] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 17.

[89] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 20.

[90] *Victor v. Todman*, 79 V.I. 381, 419, 2024 VI 18, ¶ 82 (2024) (citation omitted) ("In contrast, the remedy of imposition of a constructive trust would generally not be legally justified under the circumstances of this case because that remedy is awarded as relief based upon a finding of unjust enrichment."); *Taha v. Sharmouj*, 2022 VI SUPER 21U, ¶ 18 n.9 (Super. Ct. Feb. 17, 2022).

[91] Regarding the inclusion of fraudulent transfer in the heading of Count IV, CD Paradise does not cite any particular Virgin Islands law pertaining to a separate claim for fraudulent transfer or elaborate upon it in the applicable section of the Complaint.

*CD Paradise Holdings, LLLP v. Mushahwar et al.*                    2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
   Mushahwar and Nahakama's Motion to Dismiss
Page 15 of 16

(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff."[92] However, an unjust enrichment claim can be barred when there is a contract between the plaintiff and the defendant on the same subject matter.

> Because unjust enrichment is an equitable remedy, it—like all equitable remedies—is inappropriate where a legal remedy is available. Due to the unavailability of equitable remedies when a legal remedy is available, "[t]he general rule is that no [equitable] quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests," since legal remedies are available to a plaintiff in a breach of contract action. This doctrine, known as the "barred by contract rule," is based on "the principle that parties in contractual privity ... are not entitled to the remedies available under a judicially-imposed quasi contract.... because the terms of their agreement, express and implied, define their respective rights, duties, and expectations." Accordingly, "[a] claim for unjust enrichment cannot stand where an express contractual agreement exists between the parties."[93]

¶31    Here, Mushahwar and Nahakama argue that there is an express contract between CD Paradise and Mushahwar and Nahakama, and the barred by contract rule prohibits claims for unjust enrichment in such situations. They claim that "it is undisputed that there are express contracts between the parties" as CD Paradise "pled their existence and attached a copy of the contract as exhibits to its Complaint."[94] CD Paradise, Mushahwar, and Nahakama have all claimed that the three of them are included as listed parties in at least one express contract (i.e., the combined PEA and Amended PEA).[95]

¶32    However, this Court finds that CD Paradise has met the requirements under Rule 8(a), Rule 18 supports pleading in the alternative, and CD Paradise has also alleged numerous counts in the Complaint, including alleged fraud and fraudulent inducement, which may impact remedies sought. Because of the numerous factual uncertainties at this early point in litigation, including the availability of a legal remedy, this Court will not dismiss the claim of unjust enrichment at this stage.

## V. Count V.

¶33    In Count V, CD Paradise alleges Alter Ego/Piercing Corporate Veil. "Piercing the corporate veil is an 'equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the

---

[92] *Walters v. Walters*, 60 V.I. 768, 779–80 (2014).

[93] *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 252 (2014) (citations and footnote omitted).

[94] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 20.

[95] *Cacciamani & Rover Corp.*, 61 V.I. at 252; *Matthews v. R&M Gen. Contractors, Inc.*, 72 V.I. 583, 595, 2020 VI SUPER 033, ¶ 22 (Super. Ct. 2020).

*CD Paradise Holdings, LLLP v. Mushahwar et al.*      2026 VI SUPER 18U
Case No. ST-2023-CV-00439
Memorandum Opinion and Order Re:
  Mushahwar and Nahakama's Motion to Dismiss
Page 16 of 16

corporation.'"[96] Mushahwar and Nahakama argue that Count V should be dismissed as derivative. They state: "If Counts I through IV are dismissed as to Nahakama, LLC, there is no basis upon which the Court may proceed with Count V as a standalone cause of action because Nahakama will have no potential liability to the Plaintiff . . . ."[97] However, Counts I through IV have not been dismissed, and Nahakama still potentially faces liability. This Court will not dismiss Count V at this time as CD Paradise has provided a basic legal and factual basis to put Defendants on notice.[98]

Accordingly, it is hereby

**ORDERED** that Defendant Stephen Isa Mushahwar and Nahakama, LLC's Motion to Dismiss, filed March 21, 2024, is **DENIED;** and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order Re: Mushawar and Nahakama's Motion to Dismiss shall be directed to Attorneys Carol Ann Rich, Kimberly L. Cole, Chad C. Messier, Kyle R. Waldner, and Drew K. Patterson.

DATED: 5/7/2026

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____ 05/15/2026
**LATOYA CAMACHO**
Court Clerk Supervisor _____/_____/_____

---

[96] *Finn v. Adams*, No. ST-16-CV-752, 2018 WL 3756421, at *3 (V.I. Super. Aug. 6, 2018) (footnote omitted).

[97] Def. Stephen Isa Mushahwar and Nahakama, LLC's Mot. to Dismiss 20–21.

[98] *Dream Eng'g & Trucking, LLC v. Majestic Constr., Inc.*, 2019 VI SUPER 57U, ¶ 14 (V.I. Super. Apr. 23, 2019).